UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 15-CV-22452-KMM

DENNIS MONTGOMERY,

        Plaintiff,

vs.

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION, et al.,

        Defendants.

**DEFENDANTS' MOTION TO DISMISS FOR
LACK OF PERSONAL JURISDICTION, IMPROPER VENUE,
AND FAILURE TO STATE A CLAIM AND MEMORANDUM IN SUPPORT**

**PROSKAUER ROSE LLP**
Jonathan Galler, Esq. (FBN 0037489)
  jgaller@proskauer.com
2255 Glades Road
Suite 421 Atrium
Boca Raton, Fl 33431-7360
Phone: (561) 241-7400
Fax: (562) 241-7145

Charles S. Sims, Esq. (*pro hac vice*)
  csims@proskauer.com
John M. Browning, Esq. (*pro hac vice*)
  jbrowning@proskauer.com
Eleven Times Square
New York, NY 10036
Phone: (212) 969-3000
Fax: (212) 969-2900

*Counsel for Defendants*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...............................................................................1

STATEMENT OF FACTS .....................................................................................3

    A.    Facts Applicable to Personal Jurisdiction and Improper Venue ..............................4

    B.    Allegations of the Complaint Applicable to the Motion to Dismiss for Failure to State a Claim...............................................................6

ARGUMENT ...............................................................................................9

    I.    THE COURT SHOULD DISMISS FOR LACK OF PERSONAL JURISDICTION ..................................................................9

    II.    THE COURT SHOULD DISMISS FOR IMPROPER VENUE ..........................12

    III.    THE COURT SHOULD DISMISS THE DEFAMATION CLAIMS UNDER RULE 12(b)(6) ...................................................13

        A.    Plaintiff Failed to Plead Facts that Give Rise to a Plausible Inference that the Defamatory Statement Is False ......................................15

        B.    The Complaint Should Be Dismissed for Failure to Plausibly Plead Actual Malice ...............................................................16

        C.    Characterization of Mr. Montgomery as a "Con Man" Is Non-Actionable Pure Opinion Based on Disclosed Facts and Is Rhetorical Hyperbole ...................................................18

    IV.    THE COURT SHOULD DISMISS THE MALPRACTICE AND BREACH OF FIDUCIARY DUTY CLAIMS UNDER RULE 12(b)(6).............21

    V.    THE INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM SHOULD BE DISMISSED UNDER RULE 12(B)(6) ..........................26

CONCLUSION................................................................................................26

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adelson v. Harris*,
  973 F. Supp. 2d 467 (S.D.N.Y. 2013)......................................................................20

*Alternate Energy Corp. v. Redstone*,
  328 F. Supp. 2d 1379 (S.D. Fla. 2004) ...................................................................12

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..................................................................................... *passim*

*Atigeo LLC v. Offshore, Ltd.*,
  No. 2:13-cv-01694, ECF No. 19 (W.D. Wash. Sept. 12, 2013) ..............................11

*Baker v. Joseph*,
  938 F. Supp. 2d 1265 (S.D. Fla. 2013) ...................................................................17

*Baker v. Lightsey*,
  No. 2:11-cv-14290-KMM,
  2012 U.S. Dist. LEXIS 61878 (S.D. Fla. May 3, 2012) ..........................................26

*Bankers Trust Realty, Inc. v. Kluger*,
  672 So. 2d 897 (Fla. 3d DCA 1996) ..................................................................22, 25

*Beck v. Lipkind*,
  681 So. 2d 794 (Fla. 3d DCA 1996) .......................................................................19

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)..............................................................14, 15, 17, 18, 23, 24, 25

*Benak v. Alliance Capital Mgmt. L.P.*,
  435 F.3d 396 (3d Cir. 2006).....................................................................................1

*Bishop v. Wometco Enters., Inc.*,
  235 So. 2d 759 (Fla. 3d DCA 1970) ........................................................................16

*Bourne v. Arruda*,
  No. 10-CV-393-LM,
  2011 U.S. Dist. LEXIS 62281 (D.N.H. June 9, 2011).............................................20

*Brownsberger v. Nextera Energy, Inc.*,
  436 F. App'x 953 (11th Cir. 2011),
  *aff'g Brownsberger v. Gexa Energy, LP*, No. 10-CV-81021,
  2011 WL 197464 (S.D. Fla. Jan. 20, 2011) ............................................................13

*Busch v. Viacom Int'l Inc.*,
   477 F. Supp. 2d 764 (N.D. Tex. 2007) ................................................................. 12

*Calder v. Jones*,
   465 U.S. 783 (1984) ................................................................................................ 10

*Daimler AG v. Bauman*,
   134 S. Ct. 746 (2014) ............................................................................................... 9

*Del Fuoco v. O'Neill*,
   No. 8:09-CV-1262-T-27MAP,
   2011 U.S. Dist. LEXIS 14607 (M.D. Fla. Feb. 11, 2011) ...................................... 19

*Dunn v. Air Line Pilots Ass'n*,
   193 F.3d 1185 (11th Cir. 1999) ......................................................................... 17, 21

*Esposito v. Hollander*,
   No. 2:09-cv-728-FtM-29SPC,
   2011 U.S. Dist. LEXIS 9790 (M.D. Fla. Feb. 1, 2011) ..................................... 15, 22

*Farah v. Esquire Magazine*,
   736 F.3d 528 (D.C. Cir. 2013) ............................................................................ 14, 26

*Fortson v. Colangelo*,
   434 F. Supp. 2d 1369 (S.D. Fla. 2006) .................................................................. 21

*Freedom Watch v. United States Dep't of State*,
   13-cv-419, ECF No. 35 (M.D. Fla. Oct. 27, 2014) ................................................ 6

*Fridovich v. Fridovich*,
   598 So. 2d 65 (Fla. 1992) ....................................................................................... 26

*Friedgood v. Peters Publ'g Co.*,
   521 So. 2d 236 (Fla. 4th DCA 1988) ................................................................. 15, 16

*Gallagher v. E.W. Scripps Co.*,
   No. 08-2153-STA,
   2009 U.S. Dist. LEXIS 45709 (W.D. Tenn. May 28, 2009) .................................. 21

*Geller v. Von Hagens*,
   No. 8:10-CIV-1688-EAK-AEP,
   2010 U.S. Dist. LEXIS 129561 (M.D. Fla. Nov. 23, 2010) .................................. 15

*Green Leaf Nursery v. E.I DuPont de Nemours & Co.*,
   341 F.3d 1292, 1302-1303 (11 Cir. 2003) ............................................................. 24

*Hakky v. Wash. Post Co.*,
  No. 8:09-cv-2406-T-30MAP,
  2010 WL 2573902 (M.D. Fla. June 24, 2010)........................................................17

*Heliotrope Gen., Inc. v. Ford Motor Co.*,
  189 F.3d 971 (9th Cir. 1999) ................................................................................1

*Hemispherx Biopharma, Inc. v. Mid-South Capital, Inc.*,
  669 F. Supp. 2d 1353 (S.D. Fla. 2009) ..........................................................12, 13

*Hoechst Celanese Corp. v. Nylon Eng'g Resins, Inc.*,
  896 F. Supp. 1190 (M.D. Fla. 1995)....................................................................12

*Int'l Shoe Co. v. Washington*,
  326 U.S. 310 (1945)..............................................................................................9

*Jews for Jesus, Inc. v. Rapp*,
  997 So. 2d 1098 (Fla. 2008)................................................................................21

*Jones v. Law Firm of Hill & Ponton*,
  223 F. Supp. 2d 1284 (M.D. Fla. 2002)..........................................................22, 26

*K.R. Exch. Servs., Inc. v. Fuerst Humphrey, Ittleman, PL*,
  48 So. 3d 889 (Fla. 3d DCA 2010) .....................................................................22

*Klayman v. Judicial Watch*,
  22 F. Supp. 3d 1240, 1255 (S.D. Fla. 2014) ...................................................21, 26

*Levan v. Capital Cities/ABC, Inc.*,
  190 F.3d 1230 (11th Cir. 1999) ...........................................................................17

*Lopez v. Target Corp.*,
  676 F.3d 1230 (11th Cir. 2012) ...........................................................................26

*Madara v. Hall*,
  916 F.2d 1510 (11th Cir. 1990) .........................................................................9, 12

*McFarlane v. Esquire Magazine*,
  74 F.3d 1296 (D.C. Cir. 1996) .............................................................................17

*Med. Sav. Ins. Co. v. HCA, Inc.*,
  No. 04-cv-0156-FtM-29DNF, 2005 U.S. Dist. LEXIS 20206
  (M.D. Fla. June 24, 2005),
  *aff'd*, 186 F. App'x 919 (11th Cir. 2006)............................................................19

*MediaXposure Ltd. (Cayman) v. Harrington*,
  No. 11-cv-410-T-TGW, 2012 U.S. Dist. LEXIS 69294
  (M.D. Fla. May 17, 2012) ........................................................................22, 23, 25

iv

*Metropolitan Life Ins. Co. v. McCarson*,
    467 So. 2d 277 (Fla. 1985) .................................................................................. 26

*Mile Marker, Inc. v. Peterson Publ'g, L.L.C.*,
    811 So. 2d 841 (Fla. 4th DCA 2002) .................................................................. 16

*Milkovich v. Lorain Journal Co.*,
    497 U.S. 1 (1990) .................................................................................................. 19

*Minsurg Int'l Inc. v. Frontier Devices, Inc.*,
    No. 8:10-cv-1589-T-33EAJ, 2011 U.S. Dist. LEXIS 37962
    (M.D. Fla. Apr. 6, 2011) ...................................................................................... 15

*Montgomery v. NV Mortg. Inc.*,
    No. 2:13-cv-00360 RAJ, ECF No. 66 (W.D. Wash. Feb. 18, 2015) ..................... 11

*Ortega Melendres v. Arpaio*,
    No. 07-cv-02513-GMS (D. Ariz.) ................................................................. *passim*

*Parisi v. Sinclair*,
    845 F. Supp. 2d 215 (D.D.C. 2012) .................................................................... 17

*Peoples Gas Sys. v. Posen Constr., Inc.*,
    No. 2:11-cv-231-FtM-29SPC, 2011 U.S. Dist. LEXIS 131088
    (M.D. Fla. Nov. 14, 2011) .............................................................................. 16, 17

*Picazio v. Melvin K. Silverman and Assocs.*,
    965 F. Supp. 2d 1411 (S.D. Fla. 2013) ....................................................... 21, 22, 26

*Ponzoli & Wassenberg, P.A. v. Zuckerman*,
    545 So.2d 309, 311 (Fla. 3d DCA 1998 ) ........................................................... 24

*Reeves v. Knight-Ridder Newspaper, Inc.*,
    490 So. 2d 1333 (Fla. 3d DCA 1986) ................................................................. 17

*Revell v. Lidov*,
    317 F.3d 467 (5th Cir. 2002) ............................................................................... 12

*Rios v. McDermott, Will & Emery*,
    613 So. 2d 544 (Fla. 3d DCA 1993) ......................................................... 22, 25, 26

*Scheller v. Am. Med. Int'l Inc.*,
    502 So.2d 1268 (Fla. 4th DCA 1987) ................................................................. 26

*United Techs. Corp. v. Mazer*,
    556 F.3d 1260 (11th Cir. 2009) ............................................................................. 9

*Silver v. Karp,*
    No. 14-80447-CIV, 2014 WL 4248227 (S.D. Fla. Aug. 27, 2014) .........................................13

*Silvester v. Am. Broad. Cos., Inc.,*
    839 F.2d 1491 (11th Cir. 1988) .................................................................................................16

*Silvestrone v. Edell,*
    721 So. 2d 1173 (Fla. 1998).......................................................................................................22

*Steele v. Kehoe,*
    747 So. 2d 931 (Fla. 1999)..........................................................................................................22

*Stewart v. Sun Sentinel Co.,*
    695 So. 2d 360 (Fla. 4th DCA 1997) .........................................................................................14

*Tillett v. BJ's Wholesale Club, Inc.,*
    No. 3:09-cv-1095-J-34MCR, 2010 U.S. Dist. LEXIS 79443
    (M.D. Fla. July 30, 2010)...........................................................................................................19

*Town of Sewall's Point v. Rhodes,*
    852 So. 2d 949 (Fla. 4th DCA 2003) ..................................................................................19, 20

*United States ex rel. Osheroff v. Humana Inc.,*
    776 F.3d 805 (11th Cir. 2015) .....................................................................................................1

*Wai v. Rainbow Holdings,*
    315 F. Supp. 2d 1261 (S.D. Fla. 2004) ......................................................................................12

*Walden v. Fiore,*
    134 S. Ct. 1115 (2014).............................................................................................................9, 10

*Warner v. Schmidt,*
    No. 11-cv-0128-T-17EAJ, 2011 U.S. Dist. LEXIS 76829
    (M.D. Fla. July 15, 2011)...........................................................................................................15

**STATUTES**

28 U.S.C. § 1391(b)(1) ......................................................................................................................13

28 U.S.C. § 1391(e) ...........................................................................................................................13

28 U.S.C. § 1404(a) ...........................................................................................................................13

28 U.S.C. § 1406(a) ...........................................................................................................................12

**OTHER AUTHORITIES**

Fed. R. Evid. 201(b)....................................................................................................................1, 6, 8

14D CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER,
    FEDERAL PRACTICE & PROCEDURE § 3827 (4th ed. 2014)......................................................13

17 JAMES WM. MOORE ET AL.,
    MOORE'S FEDERAL PRACTICE § 111.34[3] (3d ed. 2014) ........................................................13

## REQUEST FOR ORAL ARGUMENT

Defendants request oral argument on the motion, and estimate that 20 minutes a side would be useful and productive.  The multiplicity of issues, the extent to which the conclusory pleadings impair straightforward analysis, and plaintiff's attempt to mislead with respect to personal jurisdiction and his domicile make oral argument more than ordinarily important and useful on the motion to dismiss.


## NO GOOD FAITH CONFERENCE REQUIRED

Pursuant to Local Rule 7.1(a)(3), no conference is required as a precondition to filing this motion to dismiss.

## PRELIMINARY STATEMENT

The very first hit on a Google search for plaintiff "Dennis Montgomery" is a Wikipedia entry quoting his own attorney as calling him a "**con artist**" and "**habitual liar engaged in fraud**," which cites (and links to) a 2010 investigatory article in *Playboy* describing him as "**The man who conned the Pentagon**."[1]   The Wikipedia entry cites (and links to) an article in a British publication, *The Register*, about Montgomery's notorious deception of the CIA into a baseless terror alert, which opens with the phrase "**A con man fooled US spooks** into grounding international flights by selling them "technology' to decode al-Qaeda messages hidden in TV broadcasts."[2]   His attorney's "con man" assessment appeared as well in the third Google hit, a lengthy *New York Times* article about Mr. Montgomery in February 19, 2011, entitled "Hiding Details of Dubious Deal, U.S. Invokes National Security."[3]   And the "con man" characterization appeared as well in the fourth hit from that Google search, an article about Montgomery on the PBS Newshour  blog, "The Rundown," entitled "**How a Reno casino con man duped the CIA and pulled one of the 'most dangerous hoaxes**' in American History."[4]   Another hit in the top

---

[1] *See Dennis L. Montgomery*, WIKIPEDIA, https://en.wikipedia.org/wiki/Dennis_L._Montgomery (last visited Aug. 21, 2015) attached as Exhibit 1.  (References in the form "Exhibit __" are to true and correct copies of documents available on the internet and attached below for the Court's convenience).  The court may take judicial notice of the online publication of the Wikipedia entry and other articles cited hereafter under Fed. R. Evid. 201(b), since the articles are offered not for their truth but for the fact of their publication.  *United States ex rel. Osheroff v. Humana Inc.*, 776 F.3d 805, 812 n.4 (11th Cir. 2015) ("courts may take judicial notice of documents such as the newspaper articles at issue here for the limited purpose of determining which statements the documents contain (but not for determining the truth of those statements")); *Benak v. Alliance Capital Mgmt. L.P.*, 435 F.3d 396, 401 n.15 (3d Cir. 2006); *Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 981 n.18 (9th Cir. 1999).

[2]   Christopher Williams, *Software Fraudster 'Fooled CIA' into Terror Alert*, THE REGISTER (Dec. 24, 2009, 11:58), http://www.theregister.co.uk/2009/12/24/cia_montgomery/, Exhibit 2.

[3]   Eric Lichtblau & James Risen, *Hiding Details of Dubious Deal, U.S. Invokes National Security*, N.Y. TIMES (Feb. 19, 2011), at 2, http://www.nytimes.com/2011/02/20/us/politics/20data.html, Exhibit 3.

[4]   Travis Daub, *How a Reno Casino Con Man Duped the CIA and Pulled One of the 'Most Dangerous Hoaxes' in American History*, PBS NEWSHOUR (Oct. 14, 2014), http://www.pbs.org/newshour/rundown/reno-casino-conman-pulled-greatest-hoax-american-history/, Exhibit 4.

page of returns from the Google search was an article in the British newspaper *The Guardian*, entitled "**The Nevada gambler, al-Qaida, the CIA and the mother of all cons**."[5]

Notwithstanding all these prior detailed findings in articles characterizing Montgomery as a con man in publications read by millions of readers around the English-speaking world, Montgomery has brought this lawsuit asserting six claims. Each claim rests in whole or in part on the statement in a June 15, 2015, New York Times article, quoting one of the defendants here, that Sheriff Arpaio, a high-profile defendant in an ongoing civil rights lawsuit in Arizona, "hired a person previously found to be a con man."  The article – like the allegedly defamatory statement read in context – reports Sheriff Arpaio's hiring of Mr. Montgomery to investigate matters including (totally unfounded) rumors of improper collusion between the Department of Justice and the sitting judge in the case against Sheriff Arpaio.  For multiple reasons, this law suit premised on that article should be dismissed.

As a threshold matter, Montgomery has not even bothered to plead that the court has personal jurisdiction over the defendants, which it lacks, and the statutory provisions on which he purportedly claims venue are plainly inapplicable. In addition, the defamation claims are dismissible on multiple grounds, including:

- literal and substantial truth as a matter of law, because Montgomery *has* previously and repeatedly been found to be a "con man," as the Google search results above quickly show;
- plaintiff's failure and inability to plausibly plead actual malice (knowing falsity) as required, in light of the fact that the sole statement complained of ("this guy hired a person previously found to be a con man") was directly and amply supported by the prominent publications identified above, which had previously characterized Montgomery in just those terms; and
- even if the statement is stripped of context and shorn of its "previously found to be" portion, the resulting statement is opinion based on reported facts, which appear in *The New York Times* article immediately prior to his quoted statement, and would be understood as rhetorical hyperbole (rather than verifiable fact).

---

[5]   Chris McGreal, *The Nevada Gambler, al-Quaida, the CIA and the Mother of All Cons*, THE GUARDIAN (Dec. 23, 2009), http://www.theguardian.com/world/2009/dec/23/dennis-montgomery-cia-al-jazeera, Exhibit 5.

- 2 -

The claims for breach of fiduciary duty and legal malpractice are infirm under *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), because the complaint consists almost entirely of legal conclusions and what few facts there are do not create a plausible inference of liability. The claim for intentional infliction of emotional distress fails because it duplicates the defamation claim and pleads no conduct even close to supporting a finding of outrageousness, as is required.

## STATEMENT OF FACTS

This is a baseless, abusive case, brought by a plaintiff who is enmeshed in related litigation in federal court in Arizona, *Ortega Melendres v. Arpaio*, No. 07-cv-02513-GMS (D. Ariz.) (hereafter "*Melendres*"), a federal civil rights action in which certain defendants in the instant action – ACLU Foundation, Wang, Segura, Pochoda, and Bendor – represent the plaintiffs. The defendant in *Melendres*, Sheriff Joe Arpaio of Maricopa County, Arizona, was found liable for a pattern and practice of discriminating against Latinos in traffic stops and illegally detaining them, and has been subject since October 2013 to a detailed injunction requiring numerous changes in the policies and operations of the Maricopa County Sheriff's Office. *See, e.g.*, Supplemental Permanent Injunction/Judgment Order, *Melendres*, ECF No. 606 (D. Ariz. Oct. 2, 2013). Following these post-trial rulings, Arpaio hired plaintiff Montgomery to undertake investigative work in Phoenix and/or the Seattle area. During a civil contempt proceeding against Arpaio and other commanders in the Maricopa County Sheriff's Office ("MCSO"), the district court questioned Arpaio about the investigation carried out by Montgomery and ordered the production of documents Montgomery had given to the MCSO.[6] Some of those documents indicate that Montgomery told Arpaio that the district judge was engaged in a conspiracy against Arpaio, along with the Attorney General of the United States and other federal agents. Montgomery has unsuccessfully attempted to intervene in that case twice – through the appearance of Mr. Klayman and another attorney – and also has sought the disqualification of the *Melendres* judge, proffering his Complaint here (and a pre-suit retraction demand) as exhibits in support of his various motions.[7]

---

[6] *See, e.g.*, Order Denying Motion for Recusal or Disqualification at 7-10, *Melendres*, ECF No. 1164 (D. Ariz. June 10, 2015) (hereafter, "*Melendres*, ECF No. 1164"), Exhibit 6; Order at 3-4, *Melendres*, ECF No. 1167 (D. Ariz. June 10, 2015), Exhibit 7.

[7] *See, e.g.*, Putative Intervenor Dennis Montgomery's Fourth Supplement to Motion for Reconsideration, *Melendres*, ECF No. 1161 (D. Ariz. July 8, 2015) (attaching Complaint); Order, *Melendres*, ECF No. 1167 (D. Ariz. June 10, 2015) (denying the motion of Montgomery's

- 3 -

In the course of the contempt proceeding in *Melendres*, Arpaio and his chief deputy concluded that Montgomery "had made false representations regarding his work product, and that they have no confidence in Montgomery or his allegations," which were "junk."[8]  In denying Arpaio's motion for recusal (which is separate from Montgomery's), the *Melendres* district court recently noted Arpaio's conclusion "that Montgomery had made false representations regarding his work product" and found that "no one claims that the conspiracy outlined in the Montgomery documents [submitted to the court on a pending motion] is true."  *Id.*

Montgomery has now imagined a second conspiracy that is the subject of the present suit, encompassing the American Civil Liberties Union Foundation ("ACLUF"), its President, two of its attorneys who work on civil rights matters for immigrants, a former FBI agent who is not an attorney and worked in the Washington DC legislative office of the American Civil Liberties Union, Inc. ("ACLU, Inc.")  until his departure in January 2014 (German Decl. ¶ 1), and two attorneys who work for the ACLU Foundation of Arizona, an Arizona state affiliate of the ACLU, which is an independent, separately incorporated entity that is neither a subsidiary of nor controlled by ACLUF or ACLU, Inc. (Dougherty Decl. ¶ 4) – all of whom are conclusorily alleged (29 times) to have "acted in concert" to "severely damage" plaintiff.[9]

### A.    Facts Applicable to Personal Jurisdiction and Improper Venue

The Complaint never alleges personal jurisdiction over any defendant, and addresses venue only conclusorily, in ¶ 2.[10]  None of the defendants are alleged to have undertaken any conduct pertinent to the Complaint in or aimed at the Southern District of Florida.  No defendant is alleged to work in Florida, to have travelled to Florida on matters bearing on Montgomery, or to have aimed any communications with or relating to him into Florida.  None is alleged to have known or believed that plaintiff (widely reported to live in the Seattle area) is a "citizen of Florida" (as alleged in ¶ 3).

---

counsel, Mr. Moseley, to appear pro hac vice and intervene); Minute Entry, *Melendres*, ECF No. 1226 (the district court denied Mr. Klayman's motion to appear pro hac vice and intervene on behalf of Mr. Montgomery from the bench).

[8] *Melendres*, ECF No. 1164, Exhibit 6 at 9.

[9] Although the Complaint names seven defendants, as of this date only three – Ms. Wang, Ms. Herman and Mr. Pochoda – have been served.

[10]  Citations in the form "¶ __" are to the Complaint in this case, unless otherwise specified.

All information available to the defendants indicates that plaintiff Montgomery resides in Washington State.[11]  In *Melendres*, Sheriff Arpaio and his second-in-command, Chief Deputy Gerard Sheridan testified that they sent detectives to the Seattle area to work with Mr. Montgomery, because he lived there.[12]

ACLUF is a New York not-for-profit entity, without any office or employees in Florida. Dougherty Decl. ¶ 2.  The President of its Board, Susan Herman, is a law professor at Brooklyn Law School who had never heard of Mr. Montgomery until he named her as a defendant here, and has no involvement whatever with any of the events pleaded (and is not alleged to have any, except in entirely conclusory terms and on "information and belief" unsupported by any specific facts). Herman Decl. ¶¶ 1-6.  Cecillia Wang is the director of ACLUF's Immigrants' Rights Project, which has offices in New York and San Francisco. Wang Decl. ¶1.  Wang is based in San Francisco, and Andre Segura works for that project from ACLUF's New York headquarters. *Id.*; Segura Decl. ¶ 1.  Wang and Segura have been counsel (along with others) in the *Melendres* litigation, which has been pending in the U.S. District Court of Arizona for more than seven years and has led to a 159-paragraph structural injunction issued by Judge Snow, the district court judge, and an ongoing contempt hearing in which Sheriff Arpaio has already admitted liability for failing to comply with prior court orders.  Wang Decl. ¶2; Segura Decl. ¶ 2.  Among their co-counsel are Daniel Pochoda and Joshua Bendor, employed by the ACLU Foundation of Arizona. Pochoda Decl. ¶¶ 1-2; Bendor Decl. ¶¶ 1-2.

Mr. Pochoda  is alleged to have uttered a single sentence to a New York Times reporter, in Arizona, about the *Melendres* case and Sheriff Arpaio, which was published in a news article on June 15, 2015.  ¶ 35 and Ex. 1.  (A nearly-identical copy of the article, with a few changes immaterial for present purposes, appeared a few hours later and is exhibit 2 to the Complaint.) That allegation alleges no conduct in or aimed at Florida.

---

[11] German Decl. ¶ 4; Wang Decl. ¶ 5; Segura Decl. ¶ 4; Pochoda Decl. ¶ 4; Bendor Decl. ¶ 4; Herman Decl. ¶ 3.

[12]  *See* Transcript of April 23, 2015 Proceedings (Arpiao Testimony) at 642:17-22; 643:1-4, 644: 11-15, 645:1-646:7, 658:4-12, *Melendres*, ECF No. 1027 (D. Ariz. Apr. 24, 2015), Exhibit 8; Transcript of April 24, 2015 Proceedings at 960:3-14, 998:2-999:7, 1007:21-1008:6 (Sheridan Testimony), *Melendres*, ECF No. 1043 (D. Ariz. Apr. 25, 2015), Exhibit 9; *see also Melendres*, ECF No. 1164, Exhibit 6 at 7, 8.

The allegations concerning defendant Michael German (¶¶ 7, 19-20) also have nothing to do with Florida.  He is alleged (falsely) to be an attorney working for the ACLU; to be a member of the D.C. and New York bars; to have entered into an attorney-client relationship with Montgomery in or about June 2013; and to have rendered legal advice to Montgomery in concert with the remaining defendants.  The publicly available rosters of the New York and D.C. bars, of which the Court can take notice,[13] do not include Mr. German at all (for the very good reason that he is not, and never has been, an attorney, and thus has never taken a bar exam or sought bar admission; never held himself out to be an attorney, and never purported to render legal advice to any ACLUF client).  But even if the Court declined to take notice of the publicly available registration lists from those jurisdictions at this juncture that establish, on the basis of judicially noticeable fact, that Mr. German is not an attorney, none of the (wholly false) averments about German points to any conduct in or aimed at Florida (or indeed any actionable wrongdoing (as opposed to conclusory generalities).[14]

The Complaint alleges no Florida domicile or address for plaintiff, or any facts suggesting that he was domiciled in Florida when he allegedly consulted ACLUF in June 2013, or at any time thereafter.  It does not allege that he had an engagement letter with Mr. German or ACLUF at all, much less one with any Florida connection; or that any attorney at ACLUF agreed to enter into an attorney-client relationship with plaintiff with regard to some project description or any specific legal work to be undertaken, much less work with some Florida connection. ¶¶ 14-15.

Plaintiff's venue allegation should also be carefully scrutinized in view of the recent findings by Judge Conway that Mr. Klayman, plaintiff's counsel, "misrepresented the basis for venue" and has apparently done so on multiple occasions.  *See* Order at 5-8, *Freedom Watch v. United States Dep't of State*, 13-cv-419, ECF No. 35 (M.D. Fla. Oct. 27, 2014), Exhibit 10.

**B.     Allegations of the Complaint Applicable to the Motion to Dismiss for Failure to State a Claim**

The Complaint alleges a claim for defamation (based on the single assertion of Mr. Pochoda included in the June 15 *New York Times* article), unnecessarily framed as three

---

[13]   See Fed. R. Evid. 201(b)(2); *see also* Fed. R. Evid. 803(6)-(9).

[14]   As the fact-finding stage of this case will establish if it survives this motion, Mr. German worked for ACLU, Inc.'s legislative office in Washington DC, left ACLU, Inc. in 2014, and now works as a fellow for the Brennan Center in New York City.  *See* German Decl. ¶ 1.

separate and essentially duplicative claims (Defamation "Per Se," "General Defamation" and "Defamation By Implication").  Like all the other claims, the defamation claim is pled merely by threading together legal conclusions lacking any factual content.  *See, e.g.*, ¶¶ 85, 88, 89.  All the defendants (other than Mr. Pochoda) are swept up on each claim solely through the conclusory (and apparently magical) phrase "acting in concert."[15]  There is no fact pleading regarding actual malice, for example, that might supply any pleaded factual basis for doubting that Mr. Pochoda believed Mr. Montgomery had been previously found to be a con man by numerous sources or to disregard the findings of the various publications quoted in the first paragraph of this memorandum above.

The Complaint also pleads nearly identical breach of fiduciary duty and professional mal-practice claims, based in part on Mr. German's alleged lawyer-client relationship and the same defamation pleaded in the defamation claims.  ¶¶ 67, 78-79, 82.  These two claims also rest on footnote 2 of plaintiffs' *Melendres* brief opposing Sheriff Arpaio's recusal motion, which  sum-marized evidence adduced by Judge Snow – that Montgomery "had informed MCSO person-nel . . . that he was using a database of information 'harvested by the CIA and confiscated by him' in his investigation, and also purported to be tracking telephone calls between the Court, the Attorney General, the Assistant Attorney General, and the U.S. Attorney for the District of Arizona" – and noted that Montgomery's statement to the MCSO "implicates possible violations of federal criminal laws by MCSO personnel in the course of the MCSO-Montgomery investiga-tion." ¶ 50. As the *Melendres* district court's recent decision expressly noted, Mr. Montgomery's name was first mentioned in the *Melendres* suit not by any of the defendants, but by Judge Snow, who entirely appropriately brought an article in the *Phoenix New Times* about Sheriff Arpaio and Mr. Montgomery to the attention of the court while Sheriff Arpaio was on the witness stand because it suggested both men's involvement in an investigation of "possible collusion between this Court and the United States Department of Justice," which was obviously relevant to the pending motion to recuse the sitting judge.[16]

The claims for professional malpractice and breach of fiduciary duty conclusorily allege that Mr. Montgomery sought "legal assistance from the ACLU starting in early June 2013,"

---

[15] ¶¶ 7, 8, 11, 19-21, 28-29, 35, 43-45, 47-48, 50, 51, 53, 56-58, 61, 67-70, 76-77, and 81.

[16] *Melendres*, ECF No. 1164, Exhibit 6 at 7.

(¶14) but the Complaint does not identify any ACLU, Inc. or ACLUF employee with whom Mr. Montgomery had contact other than Mr. German, or any facts (as distinct from conclusions) about that alleged relationship.  The Complaint describes Mr. German as the ACLU's "lead litigation attorney." ¶ 15. However, there is nothing in the Complaint explaining Mr. Montgomery's asserted belief that Mr. German is an attorney (he is not), or asserting that Mr. German ever represented himself as an attorney (he did not), or that he was purporting to act on behalf of ACLU, Inc. or ACLUF attorneys (he was not).  The Complaint does not reference any engagement letter between Mr. Montgomery and ACLU, Inc. or ACLUF (there is none).  And, while the Complaint alleges that Mr. Montgomery "disclosed to the ACLU and the other Defendants confidential information" (¶ 16) it never identifies which defendants received allegedly confidential information and what that information might be.  Nor does it plead that anything in footnote 2 of the *Melendres* brief (or otherwise) misstated any facts or disclosed confidential information allegedly supplied by Mr. Montgomery.  There is also no allegation of any basis for imputing the imagined attorney-client relationship with Mr. German to Mr. Pochoda or Mr. Bendor, who are employed by the ACLU Foundation of Arizona, a separate entity. *See* the caption to the Complaint; *see also* Dougherty Decl. ¶ 4.

Finally, the Complaint also asserts a claim for intentional infliction of emotional distress, again based on Mr. Pochoda's comment to *The New York Times* (*see* ¶¶ 104-105).  The claim conclusorily and implausibly asserts that defendants' actions "were intended to harm Sheriff Arpaio, his office and his deputies, and members of the Cold Case Posse in Maricopa County, by harming and destroying Plaintiff." ¶ 110.

Although the Complaint conclusorily alleges damages, plaintiff does not allege that he is presently engaged in professional work that could be economically harmed by Mr. Pochoda's statement, and such harm is highly implausible in view of his allegation that recent strokes commencing in May 2014 have left him so "permanently disabled and partially paralyzed" (¶103) that he has been unable to respond to pending charges of felony theft and obtaining money under false pretenses.[17]

---

[17] *See* Register of Action, *State of Nevada v. Dennis Montgomery*, Case No. C-10-268764-1 (requesting successive continuances on medical grounds) (hereafter, "Montgomery Criminal Dkt."), Exhibit 11, subject to judicial notice under Fed. R. Evid. 201(b)(2).

**ARGUMENT**

I.   **THE COURT SHOULD DISMISS FOR LACK OF PERSONAL JURISDICTION**

The Complaint should be dismissed because plaintiff has failed to allege personal jurisdiction over either ACLUF (a New York not-for-profit) or the six individual defendants, who live and work in New York, California, and Arizona.  Given the lack of any relevant contact between the defendants and Florida out of which the claims arise, applying Florida's long-arm statute would not comport with "'traditional notions of fair play and substantial justice,'" and would therefore violate the Due Process Clause. *Walden v. Fiore,* 134 S. Ct. 1115, 1121 (2014), (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  Minimum contacts only exist when (1) the contacts give rise to or relate to the cause of action; (2) the defendant purposefully avails himself of the privilege of conducting activities within the forum, thus invoking the benefits and protections of its laws; and (3) the defendant's contacts within the forum demonstrate that he reasonably anticipated being haled into court there. *Walden,* 134 S. Ct. at 1122-23.

The plaintiff bears the initial burden of presenting sufficient factual allegation to make out a prima facie case of personal jurisdiction.  *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990).  Plaintiff has failed to meet (or even attempt to meet) that burden, since the Complaint utterly lacks any allegations of minimum contacts for any of the defendants.

Even if the plaintiff had adequately pleaded a *prima facie* case of personal jurisdiction, which he has not, the defendant may challenge those allegations through affidavits, shifting the burden back to the plaintiff to prove jurisdiction.  *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009).  If the defendant sustains that burden, the plaintiff must substantiate the jurisdictional allegations by affidavits or other competent proof, not merely repeat allegations in the complaint.

Here, remarkably, the Complaint fails to allege any basis at all for personal jurisdiction against any of the defendants.  It alleges neither general nor specific jurisdiction, notwithstanding that it pleads that each of the defendants resides far from Florida, and no facts whatever concerning any conduct by defendants in or aimed at Florida.  Moreover, general jurisdiction over the ACLUF is firmly foreclosed here by the Supreme Court's recent decision narrowing general jurisdiction in *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014), holding that a corporation is subject to general jurisdiction only in its state of incorporation or principal place of business, which Florida is not for any defendant.  As for specific jurisdiction, not only is it not pleaded, but

- 9 -

the Due Process Clause would not permit personal jurisdiction over defendants here, even assuming that Florida's long-arm statute could be read to extend this far.

Specific jurisdiction "must arise out of contacts that the 'defendant himself' creates with the forum . . . and must be analyzed with regard to the defendant's contacts with the forum itself, not with persons residing there . . . ." *Walden*, 134 S. Ct. at 1118 (citation omitted). "For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." *Id*. at 1121-22.

Montgomery's 24-page Complaint alleges no facts whatever connecting any of the defendants with Florida, and no conduct of any defendant at all in or aimed at Florida, much less conduct with a "substantial connection" to Florida. The allegation that he sues "for harm and damages in this district, Florida" (¶ 12) is simply boilerplate, and not an allegation that any of the defendants (much less all of them) have acted in Florida or aimed action there from which Montgomery's claims arise. Absent allegations that defendants acted in Florida in respect of the claims (or targeted Montgomery in any way from there), specific jurisdiction is unavailable.

Nor could plaintiff rely on *Calder v. Jones*, 465 U.S. 783 (1984), which allowed specific jurisdiction over the National Enquirer in a defamation suit by actress Shirley Jones in California because (a) it concerned "the California activities of a California resident" whose "career was centered in California," (b) the article was "drawn from California sources," (c) California had the largest National Enquirer circulation of any state, (d) the defendant's "actions were expressly aimed at California," and (e) California was "the focal point both of the story and of the harm suffered." *Id*. at 788-89. *Not one* of those key factors on which *Calder* rested is present here.

Even if harm suffered by plaintiff in Florida were sufficient to satisfy the federal due process limitations on personal jurisdiction (and it is not), Montgomery has not pleaded that he was living in south Florida on June 15, 2015, when the alleged defamatory statement was published in *The New York Times*, or when the Complaint was filed, or any south Florida address (much less one that defendants knew of). He pleads no basis for finding that defendants would have known that he had left his domicile in Washington State for Florida; and offers no basis for concluding that he has any reputation to protect in Florida at all, or that any economic harm allegedly suffered in Florida results from defendants' alleged conduct, particularly in view of Montgomery's allegedly dire prognosis. *See* ¶ 103.

- 10 -

Any belated assertion of such harm would run up hard against the wealth of consistent recent indications, in court decisions and law enforcement files, that Montgomery has been domiciled in Washington State, and before that in Nevada. As recently as August 12, 2015 – less than 10 days before the filing of this brief – plaintiff's counsel advised the court in a criminal prosecution pending against plaintiff in Nevada for allegedly passing bad checks that "Mr. Montgomery *is still in Washington State and is unable to travel because he is suffering from the effects of his stroke.*"[18] ACLUF and ACLU-AZ attorneys working on *Melendres* (the Arizona case in which Mr. Montgomery's conduct has become at issue) have had no reason to believe, and have not believed, that plaintiff lives in Florida; to the contrary, substantial evidence at the *Melendres* hearings informed them that he has been domiciled in Seattle since at least 2013, as the *Melendres* district court has so found.  *See Melendres*, Dkt. No. 1164, Exhibit 6 at 7-9; *see also supra* n.11 (individual defendant declarations).

The allegedly defamatory article that underlies all of plaintiff's claims makes no reference whatever to Florida.  Even before Mr. Pochoda's statement appears in the article, the reporter summarizes the extensive factual basis for believing that Sheriff Arpaio had hired a con man, none of which concerns Florida at all.  The paragraph leading into Mr. Pochoda's quote (Compl. Ex. 1, at 4-5) states that Mr. Montgomery's

> reputation, easily uncovered with a cursory search, includes ample evidence of deception.  He duped the federal government more than once, according to federal officials, selling it antiterrorism technology that proved to be a hoax.  In 2007, he falsely accused the governor of Nevada at the time, Jim Gibbons, of having received kickbacks from Mr. Montgomery's former employer to help it secure

---

[18]  August 12, 2015 Status Hearing Transcript at Tr. 2:10-11, Case No. C-268764, Exhibit 12 (emphasis added); *see also* Montgomery Criminal Dkt., Exhibit 11 (indicating that Mr. Montgomery "lives in Washington State"); Reply of Larry Klayman to Opposition of Plaintiffs to Counsel's Motion to Appear Pro Hac Vice at Ex. 1, Dkt. 1223 (D. Ariz. Aug. 10, 2015) (indicating that Montgomery was receiving treatment in Seattle, Wa. as late as Jan 6, 2015), Exhibit 13; Order at 2, *Montgomery v. NV Mortg. Inc.*, No. 2:13-cv-00360 RAJ, ECF No. 66 (W.D. Wash. Feb. 18, 2015) (ordering Montgomery to vacate property located at 3812 94th Avenue NE, Yarrow Point, King County, Wa. by 12:01 p.m. on April 1, 2015), Exhibit 14; Stipulation to Transfer of Action to the United States District Court for the W.D. Wash. at 2, *Atigeo LLC v. Offshore, Ltd.*, No. 2:13-cv-01694, ECF No. 19 (W.D. Wash. Sept. 12, 2013) (stipulating that Montgomery resides in Washington state), Exhibit 15; Order, *Melendres*, Dkt. No. 1060 at 8 (D. Ariz. May 8, 2015), Exhibit 16 (attaching a May 2, 2015 letter filed with the court by Dennis Montgomery's counsel in that case stating "Dennis Montgomery was previously a resident of Nevada for many years and much of his work in the past occurred in Nevada").

- 11 -

secret federal defense contracts.  Two years later, Mr. Montgomery was arrested on charges that he had written $1 million in bad checks at a Las Vegas casino.  He filed for personal bankruptcy that year, over mounting gambling debts.

Motions to dismiss for lack of personal jurisdiction are routinely granted in cases with a *substantially* stronger basis for jurisdiction than appears here. For example, in *Madara*, 916 F.2d at 1513, the Eleventh Circuit affirmed dismissal of a defamation action brought in Florida against singer Daryl Hall for his comments quoted in a nationally distributed trade publication that plaintiff was "a small-time . . . guy" and Hall was "bein' *screwed* by him, basically." Even though Hall had performed in Florida at least eight times during the relevant timeframe, his musical recordings were widely distributed in Florida, and he was an investor in several limited real estate partnerships in Florida, he had no office there, and the claims did not arise from those Florida contacts, so that "to subject [] Hall to the jurisdiction of a Florida court in this case would offend due process." *Id*. at 1519.  *See also*, *e.g.,  Revell v. Lidov,* 317 F.3d 467, 473 (5th Cir. 2002) (dismissal for lack of personal jurisdiction affirmed, holding that Texas was not the "focal point" of the article, where, as here, the author did not know plaintiff resided there, the article did not mention Texas, and no newsgathering occurred there); *Busch v. Viacom Int'l Inc.*, 477 F. Supp. 2d 764, 772-73 (N.D. Tex. 2007) (no personal jurisdiction in Texas over *Daily Show* host Jon Stewart because, as here, "[t]he piece was not directed at viewers of *The Daily Show* in Texas, but was broadcast nationwide").[19]

## II.     THE COURT SHOULD DISMISS FOR IMPROPER VENUE

Even if the Court does not dismiss against the seven defendants for lack of personal jurisdiction, it should dismiss because the venue pleaded is "improper."   28 U.S.C. § 1406(a); Fed. R. Civ. P. 12(b)(3).  "When a defendant objects to venue under Rule 12(b)(3), the plaintiff bears the burden of showing that the venue selected is proper."  *Hemispherx Biopharma, Inc. v. Mid-South Capital, Inc.*, 669 F. Supp. 2d 1353, 1356 (S.D. Fla. 2009).  The court need not accept plaintiff's allegations in the complaint as true if they are "contradicted by the defendants' affi-davits."  *Id*. quoting  *Wai v. Rainbow Holdings*, 315 F. Supp. 2d 1261, 1268 (S.D. Fla. 2004).

[19] *See also Alternate Energy Corp. v. Redstone*, 328 F. Supp. 2d 1379,  1383 (S.D. Fla. 2004) (dismissing under Rule 12(b)(2) when "there is no indication that Defendant 'expressly aimed' its publication at the state of Florida"); *Hoechst Celanese Corp. v. Nylon Eng'g Resins, Inc.*, 896 F. Supp. 1190, 1195 (M.D. Fla. 1995) (no personal jurisdiction over a libel claim brought by a company headquartered in Florida arising out of an interview in Ohio that circulated to subscribers in Florida).

"When an allegation is challenged, the court may then examine facts outside of the complaint to determine whether venue is proper." *Hemispherx Biopharma*, 669 F. Supp. 2d at 1356.

Neither of the two statutory subsections Montgomery invokes authorizes venue here. *See* Compl. ¶ 2. Venue is proper under 28 U.S.C. §1391(b)(1) in "a judicial district in which any defendant resides," but only *"if all defendants are residents of the State in which the district is located"* (emphasis added). Here, *none* of the defendants is a resident of Florida, as plaintiff's own caption on the Complaint makes plain. Section 1391(e) is equally inapt, as no defendant is an "officer or employee of the United States."

Dismissal rather than transfer is proper where, as here, plaintiff knew that he was bringing venue in the wrong district, or there is reason to believe that repleading would be futile. *See generally* 17 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 111.34[3] (3d ed. 2014) (transfer is not in the interest of justice and courts dismiss if the plaintiff brought the action in the wrong district (1) for some improper purpose, *e.g.*, the action was brought in the wrong district in bad faith in an attempt to circumvent an adverse ruling related action pending elsewhere, (2) to harass the defendant with litigation in a remote forum, or (3) if "blatant forum shopping" led the plaintiff not to bring the action in the proper district in the first instance); 14D CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE & PROCEDURE § 3827 (4th ed. 2013) (dismissal proper where plaintiff's belief that venue was proper was in bad faith or unreasonable); *Brownsberger v. Nextera Energy, Inc.*, 436 F. App'x 953 (11th Cir. 2011), *aff'g Brownsberger v. Gexa Energy, LP*, No. 10-CV-81021, 2011 WL 197464 (S.D. Fla. Jan. 20, 2011); *Silver v. Karp*, No. 14-80447-CIV, 2014 WL 4248227 (S.D. Fla. Aug. 27, 2014) (dismissing where plaintiff did not affirmatively establish venue in another district, and failed to allege locus of the alleged tortious conduct).[20] Notably, this is not the first time that plaintiff's counsel has "misrepresented the basis for venue" in Florida. *See* p. 6, *supra.*

## III.   THE COURT SHOULD DISMISS THE DEFAMATION CLAIMS UNDER RULE 12(b)(6)

If the Court does not dismiss the Complaint because of the jurisdictional and venue deficiencies explained above, the Complaint should be dismissed because of plaintiff's failure to

---

[20] If the Court does not dismiss for improper venue, it should transfer to the Southern District of New York, where four of the defendants are located, "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a).

state a claim for relief under Rule 12(b)(6), as shown below.  Although Federal Rule of Civil Procedure 8(a) does not require detailed factual allegations, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plaintiff must plead sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint is implausible and must be dismissed.  *Id.* at 679.  Unsupported legal conclusions are likewise insufficient because, unlike factual allegations, they "are not entitled to the assumption of truth."  *Id.*

Early dismissal is especially appropriate in defamation cases, where the potential for costly and protracted litigation raised even by meritless cases threatens to chill speech.  Courts routinely dismiss libel claims at the pleading stage, before discovery has begun.[21]  The only pleaded basis for plaintiff's defamation claims – needlessly pleaded in triplicate as defamation per se, common law defamation and common law defamation by implication, but subject to the same fatal infirmities – is a single sentence attributed to Mr. Pochoda in a lengthy (32-paragraph) *New York Times* article, stating that Sheriff Arpaio "hired a person *previously found to be a con man*" (*i.e.*, Mr. Montgomery) (emphasis added).  Compl. Exs. 1 and 2.  As a matter of law, this remark cannot sustain a defamation claim against even defendant Pochoda, who at least is alleged to have made it, much less the other five individual defendants, who are not alleged to have published the statement or to be liable for Mr. Pochoda's statement under any viable theory, or ACLUF (which also did not publish the statement, and is not Mr. Pochoda's employer).[22]

---

[21] *Farah v. Esquire Magazine*, 736 F.3d 528, 534 (D.C. Cir. 2013) (recognizing in affirming Rule 12(b)(6) dismissal that "summary proceedings are essential in the First Amendment area because if a suit entails 'long and expensive litigation,' then the protective purpose of the First Amendment is thwarted even if the defendant ultimately prevails") (internal quotation omitted); *Stewart v. Sun Sentinel Co.*, 695 So. 2d 360, 363 (Fla. 4th DCA 1997) ("[P]retrial dispositions are 'especially appropriate' because of the chilling effect [libel] cases have on freedom of speech").

[22] Plaintiff's own caption reflects employment by a different entity.  Plaintiff repeats that the defendants "acted in concert" 29 times throughout his Complaint under the assumption that the defendants were furthering a common scheme but does not specify anything defendants (other than Pochoda) did.  *See* p. 7 n.16, *supra.* These pleadings are necessarily insufficient because "although individuals are named as defendants, no specific actions are attributed to each of the defendants separately such that defendants would have sufficient notice of the allegations."

**A.**     **Plaintiff Failed to Plead Facts that Give Rise to a Plausible Inference that the Defamatory Statement Is False**

"A false statement of fact is absolutely necessary if there is to be recovery in a defamation action."  *Friedgood v. Peters Publ'g Co.*, 521 So. 2d 236, 242 (Fla. 4th DCA 1988).  Under the current federal pleading standards, a plaintiff must "plead enough facts to state a plausible basis for the claim," including enough facts to give rise to a plausible inference that the statement complained of is false.  *Minsurg Int'l Inc. v. Frontier Devices, Inc.*, No. 8:10-cv-1589-T-33EAJ, 2011 U.S. Dist. LEXIS 37962, at *18 (M.D. Fla. Apr. 6, 2011) (citing *Twombly*, 550 U.S. at 555 (2007)).  District courts in Florida have accordingly dismissed claims for defamation where "the complaint provides no factual support for its conclusion that these statements are, in fact, false." *Minsurg Int'l Inc.*, 2011 U.S. Dist. LEXIS 37962, at *18; *see also Geller v. Von Hagens*, No. 8:10-CIV-1688-EAK-AEP, 2010 U.S. Dist. LEXIS 129561, at *10 (M.D. Fla. Nov. 23, 2010) ("It is troubling that Plaintiffs are alleging certain statements are false even though they cannot prove the statements' falsity.  Under the [federal] pleading standard, this simply is not sufficient."); *Warner v. Schmidt*, No. 11-cv-0128-T-17EAJ, 2011 U.S. Dist. LEXIS 76829, at *4 (M.D. Fla. July 15, 2011) (dismissing defamation claim for failure to plead falsity).

The Complaint lacks any plausible allegation that Mr. Pochoda's complained of statement is false.  Plaintiff misleadingly and wrongly pleads that Mr. Pochoda made a "factual assertion that ***Dennis Montgomery is 'a con man'***…." ¶ 37 (emphasis in original).  But ¶ 67 and the article annexed to the Complaint demolish that assertion: the *New York Times* article quotes Mr. Pochoda as saying that Sheriff Arpaio "hired a person *previously found to be* a con man," which is a statement plaintiff has not contradicted, and cannot.  Nowhere in the Complaint does Mr. Montgomery deny the accuracy of reporting in the *New York Times* article about what a cursory search of Mr. Montgomery's name would reveal – namely "ample evidence of deception" (Compl. Ex. 1 at 4-5; Compl.  2, at 5 ) – or otherwise state that other publications have not in fact found and reported that Mr. Montgomery is a con man.  The Complaint also does not allege that the "ample evidence of deception" that a "cursory search" would reveal (and does) consists of anything other than genuine reporting by journalists and publications that the plaintiff is a con

*Esposito v. Hollander*, No. 2:09-cv-728-FtM-29SPC, 2011 U.S. Dist. LEXIS 9790, at *4 (M.D. Fla. Feb. 1, 2011) (dismissing legal malpractice claim). Conclusory and implausible statements alleging concerted conduct are not sufficient to state good claims against defendants not directly involved in allegedly tortious activity.  *Iqbal*, 556 U.S. at 679-80.

man, or that Mr. Montgomery's own lawyer, as well as PBS, *The Guardian*, and others, have called him one.  Absent allegations denying the truth of what Mr. Pochoda actually said – as distinct from what plaintiff pretends he said – there is simply insufficient factual assertion of falsity for this suit to proceed.

### B.   The Complaint Should Be Dismissed for Failure to Plausibly Plead Actual Malice

Plaintiff's claim also fails because Mr. Montgomery is a limited-purpose public figure as a matter of law, who has not pled, as required, any facts suggesting that Mr. Pochoda, who alone is alleged to have made the statement complained of, published it knowing that it was false (or believing it probably false and publishing anyway).[23]  Absent the plausible pleading of "actual malice," the defamation claim (in any of its three incarnations) fails to state a viable claim. Montgomery's bare assertion that he is not a public figure (¶ 59) is a conclusion of law not entitled to the assumption of truth.  *Iqbal*, 556 U.S. at 679.  The *New York Times* article annexed to the Complaint itself is sufficient to establish Montgomery's status as (at least) a limited-purpose public figure, and of course there is far more here, including the recent decision in *Melendres* replete with findings about Sheriff Arpaio's engagement of Montgomery, and the *Phoenix New Times* article raised by the *Melendres* district court on the contempt proceedings against Sheriff Arpaio.  *See, e.g., Peoples Gas Sys. v. Posen Constr., Inc.*, No. 2:11-cv-231-FtM-29SPC, 2011 U.S. Dist. LEXIS 131088, at *10 (M.D. Fla. Nov. 14, 2011) (finding contractor who took on government work to be a limited public figure).[24]  Montgomery's behavior has been the subject of a full chapter in a widely reviewed book written by Pulitzer Prize-winning author James Risen, *Pay Any Price: Greed, Power, and Endless War.  See, e.g.* Amended Complaint ¶¶

---

[23] Limited purpose public figures are "public figures [who] have thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved."  *Silvester v. Am. Broad. Cos., Inc.*, 839 F.2d 1491, 1494 (11th Cir. 1988).  Whether the plaintiff is a public figure is a question of law for the court to resolve. *Mile Marker, Inc. v. Peterson Publ'g, L.L.C.*, 811 So. 2d 841, 845 (Fla. 4th DCA 2002).

[24] *See also Friedgood*, 521 So. 2d at 241-42 (finding defamation plaintiff who voluntarily involved herself in criminal investigation and trial was a limited purpose public figure); *Bishop v. Wometco Enters., Inc.*, 235 So. 2d 759, 760-61 (Fla. 3d DCA 1970) ("[Plaintiff municipal investigator], as a paid professional employee of the City of Miami, brought himself into the public arena and subjected himself to criticism and fair comment . . . .").

14, 30, 35-36, Ex. A, *Montgomery v. Risen*, 15-cv-20782 (FLSD).  Moreover, the Complaint supplies yet more justification:

- Plaintiff approached the ACLU with "regard to his efforts as a whistleblower having information about the unconstitutional and illegal acts by" various federal agencies and with the intention of emulating Edward Snowden by "coming forward on behalf of the American people as a whistleblower."  ¶¶ 15-18, 28.

- Plaintiff enlisted as a paid investigator for Sheriff Arpaio, a public official at the center of a highly publicized controversy, who introduced him to the Arizona State Attorney General and, in his capacity as an investigator, plaintiff presented Sheriff Arpaio with documents plaintiff had allegedly confiscated from the CIA. ¶¶ 31-32; *see also* Compl. Exs. 1, 2 (articles).

As a public figure, Montgomery is required to plead (and eventually prove)  facts that could show by clear and convincing evidence that defendants acted with actual malice – that is, that the statement complained of was made knowing it was false, or believing it probably false but publishing anyway.  *See, e.g.*, *Dunn v. Air Line Pilots Ass'n*, 193 F.3d 1185, 1197-98 (11th Cir. 1999); *Levan v. Capital Cities / ABC, Inc.*, 190 F.3d 1230, 1239 (11th Cir. 1999); *McFarlane v. Esquire Magazine*, 74 F.3d 1296, 1308 (D.C. Cir. 1996) ("The standard of actual malice is a daunting one.").[25]  Plaintiff has pleaded no such facts showing a plausible inference that Mr. Pochoda uttered that sentence knowing it to be false or believing it probably false.  Nor, as a matter of law, could plaintiff plausibly fact-plead knowing falsity in the face of numerous highly regarded publications that had already published articles calling him a "con man" and reported (in the same words or in substance) that he had "conned" the U.S. government and others.

Plaintiff's conclusory statements that "Defendants' defamation of Plaintiff Montgomery was made and undertaken negligently and/or with actual malice" and that "Defendants had

---

[25] Among cases dismissing for failure to plead facts that plausibly meet that standard, *see, e.g.*, *Baker v. Joseph*, 938 F. Supp. 2d 1265, 1269 (S.D. Fla. 2013) (dismissing defamation claim for failure to "satisfy the well-pleaded allegation requirement set forth in" *Iqbal* and *Twombly* with regards to actual malice); *Peoples Gas Sys.*, 2011 U.S. Dist. LEXIS 131088, at *10 (dismissing defamation claim for failure to plead actual malice); *Hakky v. Wash. Post Co.*, No. 8:09-cv-2406-T-30MAP, 2010 WL 2573902, at *6-7 (M.D. Fla. June 24, 2010) (dismissing libel claim under Rule 12(b)(6) where plaintiff failed to plausibly allege facts to support actual malice); *Parisi v. Sinclair*, 845 F. Supp. 2d 215, 219 (D.D.C. 2012) (same); *Reeves v. Knight-Ridder Newspaper, Inc.*, 490 So. 2d 1333 (Fla. 3d DCA 1986) (summary judgment).

- 17 -

knowledge of the falsity of the defamatory statements, or made the defamatory statements with reckless disregard for the truth" (¶¶ 88-89) do not come near satisfying federal pleading standards. *See Iqbal*, 556 U.S. at 679.  To the extent plaintiff relies on these legal conclusions (¶¶ 28, 34, 44, 61), these allegations are impermissibly conclusory, and lack facts that might plausibly state a claim.  Certainly no plausible facts are pled that would plausibly suggest Mr. Pochoda doubted the clear, literal truth of his statement that Sheriff Arpaio "hired a person previously found to be a con man," when that assertion had been powerfully and consistently supported by the six publications quoted or summarized in the first paragraph of this brief and by reporting in the same article in which Mr. Pochoda is quoted.  Whether or not Mr. Montgomery actually *was* "a con man," he had repeatedly been *found* to be one by at least six publications using some or all of that very phrase.  Under those circumstances, Mr. Montgomery's defamation claim pleads no facts plausibly showing that Mr. Pochoda knew or believed to be false his statement that the sources cited above show to be indisputably literally true.  Moreover, Mr. Pochoda's role in *Melendres* meant that he had been pointed to the *Phoenix New Times* article by a district court during a court hearing, and learned from Sheriff Arpaio, testifying under oath, that he believed the information he received from Mr. Montgomery was "junk."

To the extent that the Complaint might imply that Mr. Pochoda may have had "actual knowledge of the truth about these matters" because of what Mr. Montgomery allegedly told Mr. German "regarding the U.S. Government's actions" (¶ 34), these allegations are mere conclusions without a speck of factual underpinning.  No facts are pleaded – as they must be under *Iqbal* and *Twombly* – giving rise to a plausible inference Mr. Pochoda – employed in Phoenix by the ACLU Foundation of Arizona – knew what Mr. Montgomery had allegedly told Mr. German in June 2013 and believed it to be actually or probably true.  *Iqbal*, 556 U.S. at 662. No facts are pleaded that Mr. Montgomery spoke with Mr. German about the facts underlying the various "con man" articles, let alone that he refuted what the articles had reported.  Finally, there is nothing that Mr. Montgomery could have said to Mr. German that could conceivably contradict  what Mr. Pochoda was quoted as saying, namely that Mr. Montgomery had been "*previously found to be* a con man," which he was by multiple reputable journalists.

### C.   Characterization of Mr. Montgomery as a "Con Man" Is Non-Actionable Pure Opinion Based on Disclosed Facts and Is Rhetorical Hyperbole

In the alternative, even assuming that some readers might understand Mr. Pochoda's comment as his own assessment of Montgomery, rather than a summary of repeated findings that

- 18 -

called into question Sheriff Arpaio's hiring judgment, the statement so considered is a non-actionable statement of opinion and shorthand rhetorical hyperbole.  Statements that do "not contain a provably false factual connotation" or are "loose, figurative [and] hyperbolic" are absolutely protected under the First Amendment.  *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20-21 (1990); *Town of Sewall's Point v. Rhodes*, 852 So. 2d 949, 951 (Fla. 4th DCA 2003).

Non-actionable "pure" opinion – as opposed to actionable "mixed opinion"[26] – arises "when the defendant makes a comment or opinion based on facts which are set forth in the article or which are otherwise known or available to the reader or listener as a member of the public."  *Beck v. Lipkind*, 681 So. 2d 794, 795 (Fla. 3d DCA 1996).  "Whether a statement is one of [non-actionable] pure or [actionable] mixed opinion is an issue of law" suitable for determination on a motion to dismiss.  *Med. Sav. Ins. Co. v. HCA, Inc.*, No. 04-cv-0156-FtM-29DNF, 2005 U.S. Dist. LEXIS 20206, at *31 (M.D. Fla. June 24, 2005) (granting 12(b)(6) motion to dismiss defamation claim against non-actionable opinion), *aff'd*, 186 F. App'x 919 (11th Cir. 2006).[27]  In determining whether a statement is non-actionable opinion, "the court must examine the statement in its totality and the context in which it was uttered or published."  *Id*.  "[F]or an opinion to be pure and non-actionable, it need not necessarily be based upon facts that the communicator sets forth explicitly in the publication – facts otherwise known or available to the reader or the listener as a member of the public will suffice." *Tillett v. BJ's Wholesale Club, Inc.*, No. 3:09-cv-1095-J-34MCR, 2010 U.S. Dist. LEXIS 79443, at *23-24 n.12 (M.D. Fla. July 30, 2010) (internal quotation and citation omitted).

In context, the quotation attributed to Mr. Pochoda is presented by the article's author as a comment on the sort of person Sheriff Arpaio is – a law enforcement official who recklessly

---

[26] "Mixed expression of opinion occurs when an opinion or comment is made which is based upon facts regarding the plaintiff or his conduct that have not been stated in the article or assumed to exist by the parties to the communication."  *Med. Sav. Ins. Co. v. HCA, Inc.*, No. 2:04-cv-0156-FtM-29DNF, 2005 U.S. Dist. LEXIS 20206, at *30-31 (M.D. Fla. June 24, 2005), *aff'd*, 186 F. App'x 919 (11th Cir. 2006).

[27] *See also Del Fuoco v. O'Neill*, No. 8:09-CV-1262-T-27MAP, 2011 U.S. Dist. LEXIS 14607, at *22-25 (M.D. Fla. Feb. 11, 2011) (dismissing defamation complaint because statements about plaintiff's "checkered history" and statements that "others perceived him to be '*seemingly* unstable'" were protected opinion); *Tillett v. BJ's Wholesale Club, Inc.,* No. 3:09-cv-1095-J-34MCR, 2010 U.S. Dist. LEXIS 79443, at *24 n.12 (M.D. Fla. July 30, 2010) (granting motion to dismiss defamation claims because, inter alia, statement that people who display the Confederate Flag are "racists" was non-actionable opinion).

- 19 -

hired someone with Mr. Montgomery's background for a sensitive position – and readers would understand Mr. Pochoda's statement as "nothing more than [his] commentary on the facts presented," which is protected speech and not actionable as defamation. *Town of Sewall's Point*, 852 So. 2d at 951.  The article reports on the *Melendres* district court's questioning of Sheriff Arpaio and the sheriff's hiring of Mr. Montgomery as a source and informant in connection with *Melendres, and* includes ample information to support Mr. Pochoda's quoted conclusion.  The article alerted readers to the fact that various accounts of Mr. Montgomery's many misdeeds and reputation for fraudulent dealings are "easily uncovered with a cursory [browser] search," so the public was able to judge for itself the widely available assessments that support Mr. Pochoda's conclusion, and which the author of the article then summarized for readers so as to leave no doubt.  Compl. Exs. 1, 2; *see* p. 1-2, nn.1-5, *supra* (listing articles).

The author of the article (a *New York Times* bureau chief, **not** Mr. Pochoda) summarized also the *Melendres* district court's evidently highly skeptical reactions to the "bogus conspiracy theory" constructed by Mr. Montgomery and to materials provided to the MCSO, which the Sheriff  "suggested . . . were 'junk'."  Compl. Ex. 1, at 4; Compl. Ex. 2, at 4.  After two further paragraphs in which the *Times* reporter (not Mr. Pochoda) reported how Mr. Montgomery had "duped the federal government more than once, according to federal officials, selling it antiter-rorism technology that proved to be a hoax," and "falsely accused the governor of Nevada . . . of having received kickbacks from Mr. Montgomery's former employer" and "written $1 million in bad checks at a Las Vegas casino," noting that he had "filed for personal bankruptcy that year, over mounting gambling debts," the article offered a quote from Mr. Pochoda summarizing precisely what diligent readers would have already concluded from the prior paragraphs about Sheriff Arpaio, the article's true topic: "This guy hired a person previously found to be a con man."  Compl. Ex. 1, at 5; Compl. Ex. 2, at 5- 6.  Context shows this to be a statement about Sheriff Arpaio, not focused on Mr. Montgomery, affording readers the sort of evaluative judgment of public officers that the First Amendment fully protects.

To the extent a reader might understand Mr. Pochoda to have himself characterized Mr. Montgomery as a con man, "the use of the term[]… con man… is the type of rhetorical hyperbole and imaginative expression that is typically understood as a statement of opinion." *Adelson v. Harris*, 973 F. Supp. 2d 467, 492 (S.D.N.Y. 2013) (internal quotation and citation omitted).  *See also Bourne v. Arruda,* No. 10-cv-393-LM, 2011 U.S. Dist. LEXIS 62281, at *30-

- 20 -

31 (D.N.H. June 9, 2011) (summarizing prior decision by the New Hampshire Supreme Court holding that "con man" is opinion); *Gallagher v. E.W. Scripps Co.*, No. 08-2153-STA, 2009 U.S. Dist. LEXIS 45709, at *11-12 (W.D. Tenn. May 28, 2009) (statements referring to plaintiff as "'an alleged con man'". . . are protected as opinion"). Characterizations such as "scab" and "blackmail" – like "con man" – "should not be legalistically construed as the commission of the criminal offense of 'blackmail' but the way a reader would have reasonably perceived the word." *Dunn v. Air Line Pilots Ass'n*, 193 F.3d 1185, 1193 (11th Cir. 1999) ("scabs"); *see also, e.g.,* *Fortson v. Colangelo*, 434 F. Supp. 2d 1369, 1383 (S.D. Fla. 2006) (dismissing claim where defendant "indulged in rhetorical hyperbole, and his language is therefore protected").  Mr. Pochoda and each of the articles quoted in the first paragraph use "con man" in a common speech, not legalistic, way.

Mr. Pochoda's characterization is not actionable because it is an evaluative opinion based on disclosed facts, or alternatively rhetorical hyperbole that cannot support a claim for defamation.[28]

## IV.   THE COURT SHOULD DISMISS THE MALPRACTICE AND BREACH OF FIDUCIARY DUTY CLAIMS UNDER RULE 12(b)(6)

Plaintiff has not provided factual allegations capable of plausibly supporting either a fiduciary duty or professional malpractice claim and *Iqbal* therefore requires that these claims be dismissed.  *See* p. 13-14, *supra*.[29]  To state a claim for breach of fiduciary duty in Florida, a plaintiff must allege (1) the existence of a fiduciary duty, (2) the breach of that duty, and (3) damages proximately caused by the breach.  *Picazio v. Melvin K. Silverman and Assocs., P.C.,*

---

[28] Plaintiff has pleaded a claim for defamation by implication, but has failed to identify what alternative and unstated implication a reader could possibly draw from Mr. Pochoda's allegedly defamatory comment or how that implication could be false and defamatory, which is grounds for dismissal. *See Klayman v. Judicial Watch*, 22 F. Supp. 3d 1240, 1255 (S.D. Fla. 2014) (rejecting defamation by implication claim as matter of law because plaintiff "has not asserted any other defamatory implication… for the Court to consider").  In any event, "truth remains an available defense to defendants who can prove that the defamatory implication is true," so plaintiff's failure to plead that the comment (or its implications) were false dooms his defamation by implication claim just as it did his straight defamation claims. *Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1108 n.13 (Fla. 2008).

[29] Plaintiff's claims for fiduciary duty and legal malpractice share the same factual deficiencies and the elements of each cause of action significantly overlap, so it is appropriate to analyze both claims together.

- 21 -

965 F. Supp. 2d 1411, 1414-15 (S.D. Fla. 2013) (citing *Silvestrone v. Edell*, 721 So. 2d 1173, 1175 (Fla. 1998)).  Similarly, a valid claim for professional legal malpractice requires adequate allegations that "(1) there existed an attorney-client relationship; (2) that there was a neglect of a reasonable duty to the plaintiff under that relationship; and (3) the plaintiff suffered a redressable harm, i.e., loss to the client that was proximately caused by attorney's negligence." *Picazio*, 965 F. Supp. 2d at 1414 (citing *Steele v. Kehoe*, 747 So. 2d 931, 933 (Fla. 1999)).[30]

Plaintiff has failed to identify specific conduct that raises a plausible inference either of a breach of fiduciary duty or legal malpractice.  Generalized or speculative expressions of dissatisfaction with a lawyer's conduct do not suffice. "To withstand dismissal… a plaintiff must allege more than the naked legal conclusion that the law firm and attorneys have negligently rendered legal services." *K.R. Exch. Servs., Inc. v. Fuerst Humphrey, Ittleman, PL*, 48 So. 3d 889, 892 (Fla. 3d DCA 2010) (internal quotation and citation omitted).  Accordingly, a complaint that relies on conclusory assertions and "does not illuminate any of the specifics of the alleged mal-practice" must be dismissed. *Rios v. McDermott, Will & Emery*, 613 So. 2d 544, 545 (Fla. 3d DCA 1993) (dismissal where complaint did not specifically allege what attorneys did wrong).[31] Under *Iqbal*, the Complaint must contain factual allegations – as opposed to unsupported conclusions – giving rise to a "reasonable inference" that the defendant engaged in malpractice or breached a fiduciary duty in order to support a valid claim.  *Iqbal*, 556 U.S. at 678; *MediaXposure Ltd. (Cayman) v. Harrington*, No. 11-cv-410-T-TGW, 2012 U.S. Dist. LEXIS 69294, at *27 (M.D. Fla. May 17, 2012) (dismissing fiduciary duty claim absent pleaded facts "showing that the fiduciary violated a duty within the scope of the [fiduciary] relationship").

_____

[30] As a threshold matter, plaintiff has failed to adequately plead that an attorney-client relation-ship existed between him and any of the defendants, when he alleges communicating only to defendant Michael German, who is not an attorney in New York or DC or anywhere, a fact of which the Court can take judicial notice. *See* p. 6, *supra*.

[31] *See also Esposito v. Hollander*, No. 2:09-cv-728-FtM-29SPC, 2011 U.S. Dist. LEXIS 9790, at *4 (M.D. Fla. Feb. 1, 2011) (dismissing legal malpractice action for failure to plead "specific actions" attributable to individual defendants); *Jones v. Law Firm of Hill & Ponton*, 223 F. Supp. 2d 1284, 1291 (M.D. Fla. 2002) (dismissing claim where plaintiff's contentions that the defen-dants "could have helped settle his claim" were "too speculative"); *Bankers Trust Realty, Inc. v. Kluger*, 672 So. 2d 897, 898 (Fla. 3d DCA 1996) (dismissing legal malpractice complaint because it "does not state any of the specifics of the alleged malpractice").

- 22 -

Plaintiff here has failed to plead the kind of specific facts required to create a "reasonable inference" of liability. *Iqbal*, 556 U.S. at 678.   Plaintiff makes no specific allegations whatso-ever about the scope of the defendants' supposed legal representation or the duty owed to him (besides conclusorily asserting that some kind of attorney client relationship existed at some point), which makes it impossible to gauge whether any of the defendants' conduct constituted negligence or breach of specific fiduciary obligations, or proximately caused him harm.[32] The only two factual allegations plaintiff relies on as evidence of liability – Mr. Pochoda's statement quoted by *The New York Times* (¶¶ 67, 82) and a single footnote ("footnote 2") in a brief the *Melendres* plaintiffs filed in a civil rights action in Arizona (¶ 50) – do not plausibly plead actionable misconduct.  Not only is the factual support insufficient, but the implausible conclu-sions plaintiff asks this court to draw from these two facts are wholly contradicted by recent findings by the district court in *Melendres*.

The comment by Mr. Pochoda in the NYT article – "This guy hired a person previously found to be a con man" – does not plausibly support the conclusion that the defendants acted "in concert with one another," or that they attacked a supposed former client in violation of their professional responsibilities. ¶¶ 67, 82.  As a threshold matter, plaintiff does not allege any facts at all, as he must under *Iqbal* and *Twombly*, which create a plausible inference that any defendant other than Mr. Pochoda was responsible for the statement that the article reflects only he made. *See* p. 14 n.23, *supra*.  Here, as in *Iqbal*, 556 U.S. at 678, the attempt to sweep in other defen-dants with conclusory assertions is subject to dismissal.  Nor does the comment raise a plausible claim even against Mr. Pochoda, because an attorney's fair and well-supported comment to the press in connection with a highly publicized civil rights case involving current clients breaches no obligation to a purported former client who willfully but collaterally involved himself in that lawsuit seven years after it commenced.[33]

---

[32] *MediaXposure*, 2012 U.S. Dist. LEXIS 69294, at *27 (dismissing claim for, inter alia, failure to establish that defendants "violated a duty within the scope of the relationship"). Defendants owed Mr. Montgomery no fiduciary duty by virtue of their status as "experts recognized worldwide as specialists" (¶ 66) or because Mr. German allegedly "consulted" with him (¶ 15); "The mere giving of advice and guidance does not establish a fiduciary relationship since, among other things, it does not mean that a person has accepted an obligation to protect and act on the other party's behalf." *MediaXposure*, 2012 U.S. Dist. LEXIS 69294, at *25-26.

[33] That plaintiff was mentioned at all in the *Melendres* litigation was not because defendants "injected" him into the lawsuit, as plaintiff alleges (¶ 69, 80).  The Arizona district court's recent

The fiduciary duty and malpractice claims also rest on footnote 2 in the brief submitted by counsel in *Melendres* on behalf of their clients in that case and in opposition to Sheriff Arpaio's motion to disqualify the judge after Mr. Montgomery's role as a "confidential informant" came to light.[34] As a preliminary matter, footnote 2 is not actionable because the "absolute immunity for statements made in judicial proceedings precludes civil liability." *Ponzoli & Wassenberg, P.A. v. Zuckerman*, 545 So.2d 309, 310 (Fla. 3d DCA 1998 ) (applying judicial privilege to extortion claim); *Green Leaf Nursery v. E.I DuPont de Nemours & Co.*, 341 F.3d 1292, 1302-1303 (11 Cir. 2003) (absolute immunity applies to any alleged misconduct related to and occurring during litigation). Regardless, the very text plaintiff relies on squarely refutes his conclusory allegations that footnote 2 reflects that defendants "attacked" Mr. Montgomery and "threatened" him with criminal prosecution.  ¶¶ 48-52.  That is not a plausible or fair reading of the completely innocuous footnote, which objectively summarizes findings that court made on the public record in light of pertinent revelations about Mr. Montgomery's contributions to the Maricopa County Sheriff's Office. The mere reference to "possible violations of federal criminal law by MCSO personnel" of federal law in the footnote cannot plausibly be construed as a "threat," and in any event referenced only "MSCO personnel."

It is also not plausible to read, as plaintiff does, footnote 2 as showing defendants' "intention to cause criminal prosecution to be initiated against the Plaintiff Dennis Montgomery." ¶ 51. Under *Iqbal,* footnote 2 is not sufficient to plead prove bad intent, because it does not say (and cannot fairly be read to say) what plaintiff pleads it says. Nor is it plausible to conclusorily allege defendants' supposed desire to harm Sheriff Arpaio and Mr. Montgomery out of spite and to advance an immigration agenda so that "many illegal aliens remain in the United States such that they can ultimately get voter cards and vote for leftist and Democrat political candidates." ¶ 26. *Iqbal* and *Twombly* specifically hold that this kind of fanciful speculation is entitled to no

---

opinion in that case shows that Mr. Montgomery's name was first raised in the *Melendres* proceedings by the presiding judge in April 2015, not by defendants in this case, when he questioned Sheriff Arpaio about a *Phoenix New Times* article reporting on plaintiff's role as an investigator for Arpaio on matters relating to the *Melendres* case and specifically in attempting to substantiate an alleged conspiracy between Judge Snow and the Attorney General of the United States, an issue that was relevant to the ongoing contempt proceeding against Sheriff Arpaio in the *Melendres* case. *Melendres*, ECF No. 1164, Exhibit 6 at 7-8.

[34] *See* ¶ 50, quoting the entirety of footnote 2 to the *Melendres* plaintiffs' Response in Opposition to Sheriff Arpaio's recusal motion.

credence at the pleading stage.[35]  Far from alleging a factual basis for a conspiracy, Mr.
Pochoda's comment and footnote 2 are fully explained as responsible, workman-like efforts to
advance the interests of the *Melendres* plaintiffs (who had been ACLUF and ACLU Foundation
of Arizona clients for seven years before Mr. Montgomery's name was raised by Judge Snow) in
the wake of Sheriff Arpaio's recusal motion.[36]  And there is no allegation that defendants knew
that Mr. Montgomery had ever spoken to an ACLU attorney (or non-attorney) – a claim that
Mr. Montgomery inexplicably did not bring to their attention in April, 2015 (or earlier when he
took on an assignment for Sheriff Arpaio), and disclosed only in late June, 2015.

　　　The balance of plaintiff's breach of fiduciary duty and professional malpractice claims
are unsupported conclusory statements wholly insufficient to state a viable claim. The Complaint
contains no fact-pleading whatever that the defendants breached the duties of confidentiality or
loyalty, and fails to otherwise specify what exactly defendants did or failed to do in violation of
their alleged obligations to Mr. Montgomery (*see* ¶¶ 22-24, 48-49, 58, 69-71, 78-81).  The claims
are thus barred by the federal pleading standards and the basic rule that "[it is] necessary in the
setting of a legal malpractice case to plead more than the naked legal conclusion that the defen-
dant was negligent." *Rios*, 613 So. 2d at 545.[37]

　　　Finally, the Complaint's allegations of proximate harm are conclusory and implausible,
which is an independently fatal deficiency. In Florida, a plaintiff must indicate "how the injury is
causally related to the alleged breaches" in his complaint to survive dismissal.  *Bankers Trust
Realty*, 672 So. 2d at 898 (dismissing legal malpractice and breach of fiduciary duty claims for

---

[35] *See Iqbal*, 556 U.S. at 682-83 (complaint did not contain facts "plausibly showing" that
defendant government officials intended to institute a discriminatory penal policy based on race,
religion or national origin); *Twombly*, 550 U.S. at 557 (dismissing antitrust claim because the
factual allegations did not "possess enough heft to show" that the defendants were engaged in a
conspiracy) (citation omitted).

[36] *See Iqbal*, 556 U.S. at 681 ("Taken as true, these allegations are consistent with [claims of
discriminatory intent].  But given more likely explanations, they do not plausibly establish this
purpose"); *Twombly*, 550 U.S. at 568 (dismissing antitrust conspiracy claim where there was "a
natural explanation" for the conduct alleged); *MediaXposure*, 2012 U.S. Dist. LEXIS 69294, at
*27 (finding breach of fiduciary duty allegations implausible in light of more likely explanation).

[37] For example, the averment that "the Defendants unethically and illegally opposed Montgom-
ery's efforts to intervene [in the litigation], including by smearing his chosen current attorneys"
(¶ 46), is absurd; it is not unethical to oppose a motion for recusal, particularly when that oppo-
sition is so meritorious that the motion was denied. *Melendres*, ECF No. 1164, Exhibit 6 at 2.

- 25 -

failure to allege a "causal connection between the alleged acts that the attorneys committed and the alleged damages suffered").[38]  Where a case for legal malpractice does not depend on a legal ruling, there can be no claim for damages unless "it is reasonably clear that a client has actually suffered some damage from legal advice or services."  *Picazio*, 965 F. Supp. 2d at 1415 (quotation omitted).  There are no such allegations here supporting the conclusory allegation that "as a result of Defendants actions and inactions [Mr. Montgomery] has remained unemployable and destitute." ¶¶ 72, 81.  No factual basis is pleaded for the assertion that defendants caused these financial problems, which would seem fully explicable by his pleaded strokes, two-month-long hospitalization, partial paralysis, and pre-existing money troubles (referenced in the New York Times article annexed to the Complaint). ¶¶ 13, 103.

## V.   THE INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM SHOULD BE DISMISSED UNDER RULE 12(B)(6)

Because Montgomery's "defamation claim fails, so do [his] other tort claims based upon the same allegedly defamatory speech." *Farah v. Esquire Magazine*, 736 F.3d 528, 540 (D.C. Cir. 2013); *see also Fridovich v. Fridovich*, 598 So. 2d 65, 69 (Fla. 1992) (defamation privileges apply to IIED cases founded on speech, and IIED claim cannot be based on a statement simultaneously alleged to be defamatory); *Klayman v. Judicial Watch, Inc.*, 22 F. Supp. 3d 1240, 1256-57 (S.D. Fla. 2014) (dismissing IIED claim of Montgomery's counsel where plaintiff failed to show independent facts from the defamation claim).  The IIED claim is also defective for failure to allege conduct that could be found to be sufficiently "outrageous" to be actionable.[39]

### CONCLUSION

For all the foregoing reasons, defendants respectfully request that the Court grant their motion to dismiss for lack of personal jurisdiction, and in the alternative for improper venue or for failure to state a claim on which relief can be granted.

---

[38] *See also Jones*, 223 F. Supp. 2d at 1291 (dismissing malpractice claim for failure to plead facts suggesting a causal nexus between alleged conduct and plaintiff's damages); *Rios*, 613 So. 2d at 545 (dismissing complaint because "alleged damages do not flow from the [conduct alleged]").

[39] *See Baker v. Lightsey*, No. 2:11-cv-14290-KMM, 2012 U.S. Dist. LEXIS 61878, at *12-14 (S.D. Fla. May 3, 2012) (Moore, C.J.)  (dismissing for inadequate allegation of outrageousness); *Metropolitan Life Ins. Co. v. McCarson*, 467 So. 2d 277 (Fla. 1985) (same); *Scheller v. Am. Med. Int'l Inc.*, 502 So. 2d 1268 (Fla. 4th DCA 1987) (same); *Lopez v. Target Corp.*, 676 F.3d 1230 (11th Cir. 2012) (same).

Respectfully submitted,


**PROSKAUER ROSE LLP**
*Counsel for Defendants*

2255 Glades Road
Suite 421 Atrium
Boca Raton, Fl 33431-7360
Phone: (561) 241-7400
Fax:    (562) 241-7145


/s/ Jonathan Galler
Jonathan Galler, Esq. (FBN 0037489)
jgaller@proskauer.com


-and-


Charles S. Sims, Esq. (*pro hac vice*)
csims@proskauer.com
John M. Browning, Esq. (*pro hac vice*)
jbrowning@proskauer.com
Eleven Times Square
New York, NY 10036
Phone: (212) 969-3000
Fax:    (212) 969-2900

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 21, 2015, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system.  I also certify that the foregoing document is being served this day on the below counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

/s/ Jonathan Galler
Jonathan Galler, Esq.

## **SERVICE LIST**

Larry Elliot Klayman , Esq.
Klayman Law Firm
2520 Coral Way
Suite 2027
Miami, FL 33145
Tel: (310) 595-0800
Fax: (310) 275-3276
Email: leklayman@gmail.com